

2007 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

3-8-2007

# Aruanno v. Cape May Cty Jail

Precedential or Non-Precedential: Non-Precedential

Docket No. 02-1395

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2007

Recommended Citation

"Aruanno v. Cape May Cty Jail" (2007). *2007 Decisions.* Paper 1508.
http://digitalcommons.law.villanova.edu/thirdcircuit_2007/1508

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2007 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 02-1395

_____

JOSEPH ARUANNO,

Appellant

v.

CAPE MAY COUNTY JAIL;
CAPE MAY SHERIFFS OFFICE;
C. BROWN, OFFICER; COTA, OFFICER

_____

On Appeal from the United States District Court
for the District OF New Jersey
(D.C. Civil No. 99-cv-02869)
District Judge: Honorable Stephen M. Orlofsky
Magistrate Judge: Honorable Joel B. Rosen

_____

Argued on January 9, 2007

Before: SLOVITER and RENDELL , Circuit Judges,
and RUFE,* District Judge.

(Filed March 8, 2007)

_____

OPINION OF THE COURT

_____

_____

\* Honorable Cynthia M. Rufe, United States  District Judge for the Eastern District
of Pennsylvania, sitting by designation.

Louis K. Fisher    **[ARGUED]**
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC   20001

*Counsel for Appellant,*
*Joseph Aruanno*


Susanna J. Morris      **[ARGUED]**
Budd, Larner, Gross, Rosenbaum,
   Greenberg & Sade
1939 Route 70 East, Suite 100
Cherry Hill, NJ    08003

*Counsel for Appellees,*
*Cape May County Jail;*
*Cape May Sheriffs Office;*
*C. Brown, Officer; Cota, Officer*

―――――――

OPINION OF THE COURT

―――――――

RENDELL, <u>Circuit Judge</u>.

Joseph Aruanno appeals from the District Court's dismissal of his lawsuit filed

under 42 U.S.C. § 1983 for failure to state a claim pursuant to Rule 12(b)(6) of the

Federal Rules of Civil Procedure.  Appellant's claim asserts Eighth Amendment

violations by New Jersey corrections officers at the Cape May County Jail, including

numerous physical assaults by the officers, denial of proper medical treatment, and the placement of Aruanno in small cells with highly dangerous and diseased inmates, several of whom attacked Aruanno and one of whom committed suicide in the cell they shared.

Aruanno also claims that the Magistrate Judge in charge of non-dispositive motions in his case abused his discretion in refusing to appoint counsel on Aruanno's behalf in view of the fact that Aruanno suffers from mental problems that impair his ability to prosecute his case.

For the reasons set forth below, we will reverse the dismissal and the denial of the request for the appointment of counsel and remand to the District Court for further proceedings in accordance with this opinion.

**FACTUAL AND PROCEDURAL HISTORY**

Aruanno was convicted of one count of sexual assault in 1998 and was sentenced to ten years' imprisonment. He was incarcerated primarily at Cape May County Jail, beginning in December 1996 (after he was arrested and charged) and continuing until March 11, 1999. In 1997 and 1998, Aruanno was involved in two altercations with fellow inmates, one of which led to his receiving three stitches.

Aruanno filed a lawsuit in the Superior Court of New Jersey, Law Division, Special Civil Part, Cape May County, against defendants Cape May County Jail, Cape May County Sheriff's Department, and the County of Cape May, alleging that he had told the jail staff he was being threatened and that their willful disregard of his safety put him

3

in grave danger. He alleged that the staff's negligence and carelessness led to physical and mental injuries on his part. The defendants answered the complaint and filed a motion for summary judgment, which was granted in January 1999 based on defendants' absolute immunity.

In June 1999, Aruanno filed a complaint in the United States District Court for the District of New Jersey. He brought suit under 42 U.S.C. § 1983, alleging, *inter alia*, that corrections officers had violated his constitutional rights by assaulting him and knowingly placing him with dangerous, mentally unstable inmates. He also alleged that he was denied proper medical treatment when he arrived at prison with fractured ribs and was forced to sleep on the floor in that condition. Also, "[t]he average wait to see the doctor was one week and the answer to everything was an aspirin." App. 37. The named defendants in the suit were Cape May County Jail, Cape May County Sheriff's Office, Officer C. Brown, and Officer Cota.

After he filed his suit in the District Court, Aruanno filed several motions for appointment of counsel. These motions came before a Magistrate Judge assigned to manage all non-dispositive matters and matters relating to discovery. The bases for Aruanno's motions were that he had not been able to obtain an attorney, that he had no litigation experience, and that he suffered from severe psychological problems.

Aruanno submitted medical reports from 1997 and 1999, the latter of which set forth the clinical psychologist's conclusion that Aruanno had "multiple psychological

4

problems," App. 150, and that it was "clear that Mr. Aruanno is presenting with severe psychological pathology, related both to depression and paranoid delusional material." App. 152. Defendants presented excerpts from Aruanno's correctional file which did not indicate that Aruanno had been harmed during his time at Cape May any more than requiring stitches on one occasion after a fight with another inmate. Aruanno was never permitted to see his file, and the Defendants provided no affidavit to support their attorney's statement that they denied that Aruanno was beaten by the staff.

In a letter opinion and order entered on April 25, 2000, the Magistrate Judge denied the request for counsel, concluding that Aruanno's claims did not appear to have "substantial merit" and that Aruanno was capable of managing his lawsuit. The Magistrate Judge mentioned the 1997 medical report but not the more recent 1999 report.

After issuing his decision, the Magistrate Judge appeared to offer conflicting and contradictory instructions to Aruanno. Aruanno wrote to him objecting to the order denying appointed counsel, including his objection to the omission of mention of the more recent 1999 medical report. The Magistrate Judge replied that "[i]f you feel that my decision was in error, you may file a motion for reargument under Local Civil Rule 7.1." App. 171.

Aruanno wrote back, requesting that his prior submission be treated as such a motion. This request was docketed on May 8, 2000, but the Magistrate Judge did not respond. Three months later Aruanno wrote to the Magistrate Judge about his motion, to

5

which the Magistrate Judge responded: "you asked me about the status of a motion for reargument and a request for a stay. The court presently has no motions pending in your case." App. 179. Aruanno wrote back once again, reminding the Magistrate Judge about his objections to the order denying appointment of counsel, and asking "What should I do now?" App. 180. The Magistrate Judge did not respond.

The County Defendants filed a motion to dismiss the suit pursuant to Rule 12(b)(6) on December 20, 1999. In response, Aruanno filed a motion for appointment of counsel which included arguments why he believed the motion to dismiss should not be granted.

On December 18, 2000, the District Court granted the motion to dismiss, without prejudice and without explanation. However, the order stated that there were indications that Aruanno had been moved within the prison system during the pendency of the motion, and that if he could demonstrate he had not received the motion to dismiss the matter could be reopened.

Aruanno filed a motion to reopen, stating that he did not know if he had received the motion because he had been in "isolation" for much of the time: "to be honest with you I do not have a clue as to what is going on. I have been moved to a psychiatric unit and have recently been on suicide watch. I am on medication and sleep all the time." App. 182.

On January 10, 2002, the District Court issued its Opinion and Order, finding that Aruanno had in fact received the motion and dismissing Aruanno's complaint with

6

prejudice based on Rule 12(b)(6) of the Federal Rules of Civil Procedure. Aruanno filed a timely notice of appeal on February 1, 2002.

**DISCUSSION**

**A.    12(b)(6) Dismissal**

The order granting the Rule 12(b)(6) motion to dismiss is reviewed de novo. *In re Adams Golf, Inc. Secs. Litig.*, 381 F.3d 267, 273 (3d Cir. 2004) ("This Court reviews Rule 12(b)(6) dismissals *de novo*, accepting all well-pleaded allegations as true and drawing all reasonable inferences in favor of plaintiffs."). The denials of the motions for appointment of counsel are reviewed for abuse of discretion. *Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993).

We conclude that the decisions by the Magistrate Judge and the District Court were both flawed. With respect to the District Court's 12(b)(6) dismissal, the dismissal lacked any reasoning, and the immediate reference to the fact that no response was received from Aruanno indicates that the District Court may have believed that the absence of a response to a 12(b)(6) motion meant that the motion was conceded and therefore should be granted. Our precedent states clearly that this is not the case. *See Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991) ("The fact is that if a motion to dismiss is granted solely because it has not been opposed, the case is simply not being dismissed because the complaint has failed to state a claim upon which relief may be granted. Rather, it is dismissed as a sanction for failure to comply with the local court

rule.").

We cautioned in *Stackhouse* that we were not "suggest[ing] that the district court may never rely on the local rule to treat a motion to dismiss as unopposed and subject to a dismissal without a merits analysis. There may be some cases where the failure of a party to oppose a motion will indicate that the motion is in fact not opposed, particularly if the party is represented by an attorney and in that situation the rule may be appropriately invoked. Nor do we suggest that if a party fails to comply with the rule after a specific direction to comply from the court, the rule cannot be invoked." *Id.*

In this case, no local rule was mentioned, Aruanno was not represented by an attorney, and he was not specifically directed to comply with a local rule. When Aruanno replied to the District Court that he was not sure if he had received the motion to dismiss in light of circumstances relating to his medical condition, he did not concede the motion or indicate it was unopposed. Given this, the District Court should have proceeded to conduct a merits analysis. Instead, it dismissed the complaint with prejudice. Thus, the District Court appears not to have employed the proper 12(b)(6) inquiry.

Moreover, even if the District Court's order resulted from an examination of the merits, we would have little difficulty finding we must reverse the District Court. Aruanno's § 1983 suit challenged the actions taken by Cape May corrections officials and sets forth a claim under the Eighth Amendment of "unnecessary and wanton infliction of pain," *Ingraham, v. Wright*, 430 U.S. 650, 670 (1977), via his allegations of excessive

8

force, inhumane integration with dangerous prisoners, and the absence of proper medical care.

The standard of review for Rule 12(b)(6) orders is a generous one, and the standard is even more forgiving when a *pro se* plaintiff is involved. *Dluhos v. Strasberg*, 321 F.3d 365 (3d Cir. 2003). Aruanno's allegations state a claim for which relief can be granted, "accepting all well-pleaded allegations as true and drawing all reasonable inferences in favor of plaintiffs." *In re Adams Golf, Inc. Secs. Litig.*, 381 F.3d 267, 273 (3d Cir. 2004).[1]

## B.    Denial of Appointed Counsel

We review the denial of appointed counsel for abuse of discretion. *Tabron v. Grace*, 6 F.3d 147 (3d Cir. 1993) ("[B]ecause 28 U.S.C. § 1915(d) gives the district

---

[1]Defendants raise the argument that dismissal was appropriate given the effect of Aruanno's state-court proceedings, which were terminated by summary judgment before his federal claim was filed. Arguing under New Jersey's "entire controversy doctrine," a relative of *res judicata*, Defendants assert that the fact that the state proceedings involved the same allegations means that the § 1983 claim is barred as a 12(b)(6) matter. This is incorrect. *See Rycoline Prods. v. C & W Unlimited*, 109 F.3d 883, 886 (3d Cir. 1997) ("We held in *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 (3d Cir. 1978), that if a statute of limitations 'bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6).' This holding applies not only to a statute of limitations defense, but also to any affirmative defense raised pursuant to Rule 8(c), including res judicata and the Entire Controversy Doctrine."). Thus, the affirmative defense put forward by Defendants cannot be the basis for a 12(b)(6) dismissal, because it was not evident from the face of the complaint. Nor is it at all clear that, even if this doctrine applied, it would be applicable in Aruanno's case, because the Defendants concede that Defendant Officer Cota was not a party to the state-court action. Respondent's Br. 19 n.2.

courts broad discretion to appoint counsel, the courts of appeals should reverse that exercise of discretion only where the party seeking appointment has shown that the district court's decision not to appoint counsel was clearly an abuse of discretion . . . .").

The Magistrate Judge correctly cited *Tabron v. Grace*, which sets forth the factors to be taken into consideration in determining whether the appointment of counsel is warranted. These factors include whether the suit has "arguable merit;" the plaintiff's ability to present his case; and the plaintiff's "education, literacy, prior work experience, and prior litigation experience." *Tabron*, 6 F.3d at 156. The "court must also consider the difficulty of the particular legal issues," assess "the degree to which factual investigation will be required and the ability of the indigent plaintiff to pursue such investigation" and "the extent to which prisoners and others suffering confinement may face problems in pursuing their claims." *Id.* Finally, "where the claims are likely to require extensive discovery and compliance with complex discovery rules, appointment of counsel may be warranted," and "when a case is likely to turn on credibility determinations, appointment of counsel may be justified." *Id.*

The Magistrate Judge misapplied these factors to the facts before him. In weighing each of the factors, the Magistrate Judge erred by giving insufficient consideration to the uncontroverted medical reports describing Aruanno's condition and

10

to the overall difficulty Aruanno faced in bringing his suit.[2]  The Magistrate Judge neglected to mention the most recent medical report describing Aruanno's condition, instead referring exclusively to an earlier report analyzing Aruanno's competency to stand trial.  The Magistrate Judge then compounded that error by drawing erroneous conclusions from the competency report.  "[Aruanno] was found to be aware of the nature and consequences of the charges against him.  It was also found that [Aruanno] could adequately participate in the defense of his criminal case.  This diagnosis confirms that the plaintiff is capable of defending his pending civil rights case."  App. 21.  That framing of the *Tabron* test flatly distorted it; a defendant's competency to stand trial does not equate to his being able to manage a civil suit.  Moreover, the Magistrate Judge failed to consider that this type of suit, a § 1983 suit against prison officials, would include credibility and discovery issues and would be appropriate for the appointment of counsel under our caselaw.

We have said that "[i]f it appears that an indigent plaintiff with a claim of arguable merit is incapable of presenting his or her case, serious consideration should be given to appointing counsel, and if such a plaintiff's claim is truly substantial, counsel should ordinarily be appointed." *Tabron*, 6 F.3d at 156 (citation omitted).  In this case,

---

[2]There is a question as to whether the Magistrate Judge misapplied the "arguable merit" factor insofar as he deemed the claims to lack "substantial merit."  App. 15. Even if this was merely a slip of the pen, the factor was misapplied because the claims do possess arguable merit.

11

Aruanno's claim has arguable merit and his medical condition rendered him incapable of prosecuting his case. The denial of the request was tainted by an unduly restrictive application of *Tabron* to the facts at hand, and we conclude that the denial of the request for appointment of counsel was an abuse of discretion. Accordingly we will reverse the order and require that counsel be appointed.

**CONCLUSION**

In light of the foregoing, the Order of the District Court entered on January 10, 2002, denying the motion to reopen and dismissing the action with prejudice will be REVERSED. The case will be REMANDED to the District Court with direction to appoint counsel for appellant and for further proceedings consistent with the Opinion of this Court.

_____